**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 10-cv-436 (RMC) |
| CENTRAL INTELLIGENCE AGENCY, | |
| *Defendant*. | |

## PLAINTIFFS' REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEF

Plaintiffs write in reply to Defendant Central Intelligence Agency's ("CIA")

supplemental brief addressing Plaintiffs' February 12, 2014 notice of supplemental authority. *See*

Pls.' Notice of Suppl. Auth. (Feb. 12, 2014), ECF No. 56; *see also* Minute Order (May 19, 2014)

(ordering CIA's supplemental brief and setting June 16, 2014 deadline for Plaintiffs' reply).

\* \* \*

More than three months ago, Plaintiffs called the Court's attention to an unambiguous

acknowledgment of the CIA's "use of drones" by the Director of National Intelligence, James

Clapper, in an open congressional hearing—simply "the latest in a series of similar

acknowledgments." Pls.' Notice of Suppl. Auth. at 1–2; *see* Pls.' Opp. at 23–33, ECF No. 52.

That the CIA was not eager to respond to the notice—it did not do so until twice ordered by this

Court, *see* Minute Order (May 19, 2014); Minute Order (Apr. 9, 2014)—is understandable,

because Mr. Clapper's statement before the Senate Armed Services Committee cannot

reasonably be read as anything other than an acknowledgment that the CIA carries out drone

strikes. The CIA now suggests that Plaintiffs should have provided a "more complete[]"

quotation from the transcript, Def.'s Suppl. Br. at 1 (June 2, 2014), ECF No. 60, but the

additional context for Mr. Clapper's statement only underscores Plaintiffs' point. In his exchange with Senator Bill Nelson, Mr. Clapper not only confirms that the CIA is "exploring shifting the use of drones . . . from the CIA to the DOD" but goes on to agree that one justification for that shift would be to allow the government to publicly address claims about civilian casualties. *See* Siobhan Gorman, *CIA's Drones, Barely Secret, Receive Rare Public Nod*, Wall St. J. Wash. Wire Blog (Feb. 11, 2014, 4:19 PM), http://on.wsj.com/1aUUN53 (Sen. Nelson: "Is that one of the justification[s] for the policy?" Mr. Clapper: "[T]hat is, but I wouldn't characterize that as the primary reason."). The CIA also argues that the Court should disregard Mr. Clapper's acknowledgment because "only the Senator"—and not Mr. Clapper—"makes any reference to the CIA or strikes." Def.'s Suppl. Br. at 3. But the Court should reject the agency's invitation to read Mr. Clapper's answers while ignoring the questions he was addressing. The meaning of Mr. Clapper's exchange with Senator Nelson is plain.[1]

      The CIA is also incorrect to argue that "Mr. Clapper's statement is insufficiently specific" to be of consequence here. Def.'s Suppl. Br. at 4. As an initial matter, the CIA mischaracterizes Plaintiffs' argument regarding the significance of Mr. Clapper's statement. The CIA maintains that whatever Mr. Clapper said in February, he did not "even arguably reveal[] . . . information about the specific nature of any CIA role, the depth and breadth of such

---

[1] The CIA asks the Court to disregard official acknowledgements, like Mr. Clapper's, that post-date the agency's consideration of Plaintiffs' FOIA request. The D.C. Circuit has rejected this request already (in this very case), *see ACLU v. CIA*, 710 F.3d 422, 431 n.10 (D.C. Cir. 2013), and the Second Circuit has rejected it as well, *see N.Y. Times Co. v. DOJ*, Nos. 13-422 & 14-445, 2014 WL 1569514, at *7 n.9 (2d Cir. Apr. 21, 2014) (stating that taking judicial notice of post-briefing factual developments "is the most sensible approach to ongoing disclosures by the Government made in the midst of FOIA litigation"—especially "disclosures [that] go[] to the heart of the contested issue" (second brackets in original and quotation marks omitted)). No legitimate interest would be served by the Court turning a blind eye to the official disclosure of information that the CIA earlier said was secret. *See* Pls.' Opp. at 28–29.

a role, or details about any specific operation." Def.'s Suppl. Br. at 5. But while Plaintiffs have argued that *other* official acknowledgments have revealed information about the nature, depth, and breadth of the CIA's role in the government's targeted-killing program (including its involvement in specific strikes), *see* Pls.' Opp. at 23–27, they made no such claim about Mr. Clapper's exchange. *See* Pls.' Notice of Suppl. Auth. at 1–2 (characterizing the significance of Mr. Clapper's statement as having officially acknowledged "that the CIA has an operational involvement in the government's targeted-killing program").

More fundamentally, the CIA is wrong to argue that Mr. Clapper's acknowledgment— even if that acknowledgment stood on its own—"does not materially impact" this case, Def.'s Suppl. Br. at 3. The agency's argument assumes that any acknowledgment that does not "detail the depth, breadth, or precise nature of any CIA role" in the targeted-killing program cannot undermine its "no number no list" response. *See* Def.'s Suppl. Br. at 4. But an agency's submission of a "no number no list" response "amounts to the singular, extreme claim" that "there is *no feasible way* to describe *any* of the [withheld] documents" without disclosing still-unacknowledged information that is "protected by one of the FOIA's exemptions." Pls.' Opp. at 17–18. Here, Mr. Clapper's acknowledgment of the fact that the CIA uses drones for targeted killing means that the agency cannot lawfully withhold information on the grounds that it would disclose that fact—yet this is precisely what the agency's "no number no list" response seeks to do. Now that Mr. Clapper has officially acknowledged that the CIA has an operational role in drone strikes, the CIA has no justification for refusing to provide a *Vaughn* index listing (for example) a legal memorandum concerning targeted-killing operations carried out by the agency. Nor does the agency have a justification for refusing to list a document discussing the number of civilian casualties caused by CIA strikes. The CIA may have a legitimate interest in withholding

some passages of the *documents* themselves, but merely listing and describing documents such as these on a *Vaughn* index would not reveal anything more than what Director Clapper told Congress: that the CIA uses drones for targeted killing.[2]

Finally, Plaintiffs continue to oppose the CIA's plea for a "temporary stay" of this litigation, Def.'s Suppl. Br. at 2. As Plaintiffs have explained, what the agency characterizes as a "temporary" stay would actually be a lengthy one. *See* Pls.' Opp. to Def.'s Mot. to Stay Proceedings at 1–2 (May 1, 2014), ECF No. 59. Moreover, the CIA has provided the Court with no good reason—let alone a "hardship or inequity," *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936), or a "'pressing need,'" *Belize Social Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 255)—to stay the litigation in the face of the injury to Plaintiffs and the public that would result. *See* Pls.' Opp. to Def.'s Mot. to Stay Proceedings at 4 & n.2. The CIA's suggestion that "the government's ultimate position in this case could turn on the outcome of the appellate process in New York," Def.'s Suppl. Br. at 2, is merely another plea

---

[2] Indeed, as Plaintiffs have explained, "[e]ven if the *only* thing the CIA had disclosed was an *intelligence* interest [rather than an *operational* interest] in the use of drones, the CIA's 'no number no list' response would be unlawful" because "it is not remotely plausible that the agency cannot describe, in even general terms, any of the documents responsive to Plaintiffs' request." Pls.' Opp. at 18 (second emphasis added).

The CIA also overstates the extent to which official acknowledgments must precisely match withheld information in order to waive a FOIA privilege. *See* Def.'s Suppl. Br. at 3–5. As the Second Circuit recently explained, "the 'matching' aspect of the [official-acknowledgment] test" does not "require absolute identity." *N.Y. Times Co.*, 2014 WL 1569514, at *14. Indeed, "[a] FOIA requester would have little need for undisclosed information if it had to match precisely information previously disclosed." *Id.* Moreover, it is far from clear that the "matching" aspect is actually a requirement. *Id.*, at *14 n.19 (stating that "rigid application of [the official-acknowledgment test] may not be warranted in view of its questionable provenance"). Tracing the test back through cases in the D.C. Circuit, the Second Circuit observed that *Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983), "the ultimate source of the three-part test," does not even "mention a requirement that the information sought matches the information previously disclosed." *N.Y. Times Co.*, 2014 WL 1569514, at *14 n.19.

for even further delay. This case has been fully briefed to this Court; the government has *already taken* its "ultimate position in this case." The CIA should not be permitted to suspend this litigation because of the possibility that the CIA may want to change its position in this litigation at some indefinite point in the future.[3]

Dated:  June 5, 2014

Respectfully submitted,

*/s/ Jameel Jaffer*

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union of the
  Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
T: 202.457.0800
F: 202.452.1868
artspitzer@aclu-nca.org

Jameel Jaffer
Hina Shamsi
Brett Max Kaufman (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street—18th Floor
New York, NY 10004
T: 212.519.2500
F: 212.549.2654
jjaffer@aclu.org

---

[3] The CIA asks the Court for "the opportunity to file a supplemental declaration addressing the impact" of Mr. Clapper's acknowledgment on the agency's "no number no list" response. Def.'s Suppl. Br. at 3 n.3. But the CIA provided its views on this matter in its brief, *see* Def.'s Suppl. Br. at 3–5, and if it believed a supplemental declaration was necessary, it should have filed that declaration with its brief.